UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
ALEKSEI PANOV,

Plaintiff,

- against –

PRESTIGE WINDOW WORKS CORPORATION,

Defendant.
---------------------------------------------------------------------X
PRESTIGE WINDOW WORKS CORPORATION,

Defendant/Third-Party Plaintiff,

- against -

GOTHAM WINDOW & WOOD REPAIR CORPORATION,

Third-Party Defendant.
---------------------------------------------------------------------X

Case No.: 2:24-cv-8199 (SJB) (AYS)

**DEFENDANT'S ANSWER TO COMPLAINT WITH COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**

Defendant/Third-Party Plaintiff PRESTIGE WINDOW WORKS CORPORATION (hereinafter "Prestige" or "Defendant"), by and through its attorneys, Sage Legal LLC, hereby answers the Complaint (the "Complaint") of Plaintiff ALEKSEI PANOV ("Plaintiff") herein, and asserts counterclaims against Plaintiff as well as related claims against GOTHAM WINDOW & WOOD REPAIR CORPORATION ("Gotham" or "Third-Party Defendant"), as follows:

## AS TO THE "INTRODUCTION"

1. Defendant admits that Plaintiff asserts the basis for his claims in ¶ 1 of the Complaint, but denies the truth of those allegations and/or that Plaintiff is entitled to relief.

2. Defendant admits that Plaintiff asserts the basis for his claims in ¶ 2 of the Complaint, but denies the truth of those allegations and/or that Plaintiff is entitled to relief.

**AS TO "JURISDICTION AND VENUE"**

3. No response is required to the allegations set forth in ¶ 3 of the Complaint to the extent they set forth legal conclusions. To the extent a response is required, Defendant denies the allegations set forth in ¶ 3 of the Complaint.

4. No response is required to the allegations set forth in ¶ 4 of the Complaint to the extent they set forth legal conclusions. To the extent a response is required, Defendant denies the allegations set forth in ¶ 4 of the Complaint.

**AS TO "PARTIES"**

5. Defendant denies knowledge or information sufficient to admit or deny the allegations set forth in ¶ 5 of the Complaint.

6. Defendant denies the truth of the allegations contained in ¶ 6 of the Complaint.

7. No response is required to the allegations set forth in ¶ 7 of the Complaint to the extent they set forth legal conclusions. To the extent a response is required, Defendant denies the allegations set forth in ¶ 7 of the Complaint.

8. Defendant denies the truth of the allegations set forth in ¶ 8 of the Complaint.

9. Defendant denies the truth of the allegations set forth in ¶ 9 of the Complaint.

10. Defendant denies the truth of the allegations set forth in ¶ 10 of the Complaint.

**AS TO THE "STATEMENT OF FACTS"**

11. Defendant denies the truth of the allegations set forth in ¶ 11 of the Complaint.

12. Defendant denies the truth of the allegations set forth in ¶ 12 of the Complaint.

13. No response is required to the allegations set forth in ¶ 13 of the Complaint to the extent they set forth legal conclusions. To the extent a response is required, Defendant denies the allegations set forth in ¶ 13 of the Complaint.

14. Defendant denies the truth of the allegations set forth in ¶ 14 of the Complaint.

15. Defendant denies the truth of the allegations set forth in ¶ 15 of the Complaint.

16. Defendant denies the truth of the allegations set forth in ¶ 16 of the Complaint.

17. Defendant denies the truth of the allegations set forth in ¶ 17 of the Complaint.

18. Defendant denies the truth of the allegations set forth in ¶ 18 of the Complaint.

19. Defendant denies the truth of the allegations set forth in ¶ 19 of the Complaint.

20. Defendant denies the truth of the allegations set forth in ¶ 20 of the Complaint.

21. Defendant denies the truth of the allegations set forth in ¶ 21 of the Complaint.

22. Defendant denies the truth of the allegations set forth in ¶ 22 of the Complaint.

23. Defendant denies the truth of the allegations set forth in ¶ 23 of the Complaint.

24. Defendant denies the truth of the allegations set forth in ¶ 24 of the Complaint.

25. Defendant denies the truth of the allegations set forth in ¶ 25 of the Complaint.

**AS TO "COUNT 1 – FAILURE TO PROVIDE A WAGE NOTICE"**

26. To the extent that a response is required concerning the allegations contained in ¶ 26 of the Complaint, Defendant denies the allegations.

27. Defendant admits that Plaintiff asserts the basis for his claims in ¶ 27 of the Complaint, but denies the truth of those allegations and/or that Plaintiff is entitled to relief.

28. Defendant denies the truth of the allegations set forth in ¶ 28 of the Complaint.

29. Defendant denies the truth of the allegations set forth in ¶ 29 of the Complaint.

30. Defendant denies the truth of the allegations set forth in ¶ 30 of the Complaint.

**AS TO "COUNT 2 – FAILURE TO PROVIDE WAGE STATEMENTS"**

31. To the extent that a response is required concerning the allegations contained in ¶ 31 of the Complaint, Defendant denies the allegations.

32. Defendant denies the truth of the allegations set forth in ¶ 32 of the Complaint.

33. Defendant denies the truth of the allegations set forth in ¶ 33 of the Complaint.

34. Defendant denies the truth of the allegations set forth in ¶ 34 of the Complaint.

**AS TO "COUNT 3 – VIOLATION OF THE FAIR LABOR STANDARDS ACT – FAILURE TO PAY AN OVERTIME WAGE"**

35. To the extent that a response is required concerning the allegations contained in ¶ 35 of the Complaint, Defendant denies the allegations.

36. No response is required to the allegations set forth in ¶ 36 of the Complaint to the extent they set forth legal conclusions. To the extent a response is required, Defendant denies the allegations set forth in ¶ 36 of the Complaint.

37. No response is required to the allegations set forth in ¶ 37 of the Complaint to the extent they set forth legal conclusions. To the extent a response is required, Defendant denies the allegations set forth in ¶ 37 of the Complaint.

38. Defendant admits the truth of the allegations set forth in ¶ 38 of the Complaint.

39. No response is required to the allegations set forth in ¶ 39 of the Complaint to the extent they set forth legal conclusions. To the extent a response is required, Defendant denies the allegations set forth in ¶ 39 of the Complaint.

40. Defendant denies the truth of the allegations set forth in ¶ 40 of the Complaint.

41. Defendant denies the truth of the allegations set forth in ¶ 41 of the Complaint.

42. Defendant denies the truth of the allegations set forth in ¶ 42 of the Complaint.

43. Defendant denies the truth of the allegations set forth in ¶ 43 of the Complaint.

44. Defendant denies the truth of the allegations set forth in ¶ 44 of the Complaint.

45. Defendant denies the truth of the allegations set forth in ¶ 45 of the Complaint.

46. Defendant denies the truth of the allegations set forth in ¶ 46 of the Complaint.

47. Defendant denies the truth of the allegations set forth in ¶ 47 of the Complaint.

48. Defendant denies the truth of the allegations set forth in ¶ 48 of the Complaint.

**AS TO "COUNT 5 – VIOLATION OF THE NEW YORK LABOR LAW – FAILURE TO PAY OVERTIME WAGES"**

49. To the extent that a response is required concerning the allegations contained in ¶ 49 of the Complaint, Defendant denies the allegations.

50. No response is required to the allegations set forth in ¶ 50 of the Complaint to the extent they set forth legal conclusions. To the extent a response is required, Defendant denies the allegations set forth in ¶ 50 of the Complaint.

51. Defendant denies the truth of the allegations set forth in ¶ 51 of the Complaint.

52. Defendant denies the truth of the allegations set forth in ¶ 52 of the Complaint.

53. Defendant denies the truth of the allegations set forth in ¶ 53 of the Complaint.

54. Defendant denies the truth of the allegations set forth in ¶ 54 of the Complaint.

55. Defendant denies the truth of the allegations set forth in ¶ 55 of the Complaint.

**AFFIRMATIVE DEFENSES**

56. Defendant sets forth the following Affirmative Defenses without assuming or undertaking any burdens of proof not imposed by law.

**FIRST AFFIRMATIVE DEFENSE**

57. The Complaint, and each cause of action therein, fails to state a cause of action upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

58. Plaintiff has been paid all monies owed to him.

**THIRD AFFIRMATIVE DEFENSE**

59. Plaintiff was not an employee of Defendant.

**FOURTH AFFIRMATIVE DEFENSE**

60. The claims set forth in the Complaint are barred, in whole or in part, by documentary evidence.

**FIFTH AFFIRMATIVE DEFENSE**

61. Although Defendant denies that it owes any unpaid wages or other amounts to Plaintiff, or that it employed Plaintiff, if it is determined that Plaintiff is an employee and/or that such monies are owed, Plaintiff cannot establish that any alleged violation of the FLSA was willful and, thus, cannot establish entitlement to a three-year statute of limitations with respect to his claims.

**SIXTH AFFIRMATIVE DEFENSE**

62. To the extent Plaintiff proves that he is an employee, this action is barred, in whole or in part, as to all or some of the hours allegedly worked by Plaintiff that was not reported in accordance with any applicable policies or procedures.

**SEVENTH AFFIRMATIVE DEFENSE**

63. Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

**EIGHTH AFFIRMATIVE DEFENSE**

64. Plaintiff's claims are barred, in whole or in part, in equity under the doctrines of unclean hands, laches, waiver, and/or estoppel.

**NINTH AFFIRMATIVE DEFENSE**

65. Plaintiff is not entitled to an award of any damages, including but not limited to costs and attorneys' fees.

**TENTH AFFIRMATIVE DEFENSE**

66. Plaintiff's claims are barred, in whole or in part, by accord and satisfaction.

**ELEVENTH AFFIRMATIVE DEFENSE**

67. Plaintiff is not entitled to liquidated damages pursuant to the NYLL and/or the FLSA because at all times Defendant acted in good faith and had reasonable grounds for believing that its acts and/or omissions were not a violation.

**TWELFTH AFFIRMATIVE DEFENSE**

68. Defendant's actions regarding payroll practices and compliance with the NYLL and/or the FLSA were in good faith and Defendant had reasonable grounds for believing its actions were in compliance with the NYLL and/or the FLSA.

**THIRTEENTH AFFIRMATIVE DEFENSE**

69. To the extent Plaintiff proves that he is an employee, this action is barred, in whole or in part, as to all or some of the hours allegedly worked of which Defendants lack actual or constructive knowledge.

**FOURTEENTH AFFIRMATIVE DEFENSE**

70. Plaintiff's claims are barred to the extent that Plaintiff materially breached its respective obligations to Defendant, if any.

**FIFTEENTH AFFIRMATIVE DEFENSE**

71. Although Defendant denies that it owes any unpaid wages or other amounts to Plaintiff, if it is determined that such monies are owed, Plaintiff is not entitled to liquidated damages because Defendants' actions with respect to the method of paying Plaintiffs was taken in good faith.

**SIXTEENTH AFFIRMATIVE DEFENSE**

72. To the extent Plaintiff proves that he is an employee, Plaintiff, acting independently or in concert with others, violated his duty of loyalty to Defendant as an employee and must thus be disgorged of his wages.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

73. Plaintiff's claims for damages are barred, in whole or in part, by his failure to mitigate damages.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

74. Plaintiff's claims must be dismissed for failure to include necessary parties.

**NINETEENTH AFFIRMATIVE DEFENSE**

75. Although Defendant denies that it owes any unpaid wages or other amounts to Plaintiff, if it is determined that such monies are owed, then Defendant asserts that at all times relevant to this action a reasonable good faith dispute existed as to whether such wages or other amounts were owed.

**TWENTIETH AFFIRMATIVE DEFENSE**

76. Any claim for additional compensation by Plaintiff must be reduced by compensation already paid to Plaintiff for periods not compensable under the FLSA and the NYLL.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

77. Plaintiff's claims are barred or should be reduced, in whole or in part, by exclusions, exceptions, credits, recoupments, or offsets permissible under the FLSA and/or NYLL.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

78. If Plaintiff succeeds in establishing any violation under the FLSA or the NYLL, and to the extent any sums are found due and owing to Plaintiff, which is expressly denied, Defendant is entitled to a set-off against said sum to the extend paid, tendered, waived, compromised, and/or released prior to the adjudication herein, including but not limited to those amounts paid, tendered, waived, compromised, and/or released through any other proceeding, either formal or informal, or to the extent any additional compensation was paid to Plaintiff over and above his wages.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

79. Any damages alleged in this action (if any are in fact sustained) were caused by the acts or omissions of others, including Plaintiff, for which Defendant has no legal responsibility or culpability.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

80. The claims in the Complaint are barred, in whole or in part, by *res judicata* and/or collateral estoppel.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

81. Plaintiff's claims are barred to the extent they petitioned for bankruptcy either under Chapter 7 or Chapter 13 of the United States Bankruptcy Code yet failed to disclose potential claims against Defendant as required under applicable bankruptcy laws.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

82. The injuries and damages alleged, all of which are denied by Defendant, were caused by the intervening, interceding and superseding acts of other parties not under the control of Defendant.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

83. Plaintiff worked for another entity, business, or company other than Defendant during all or part of the time that Plaintiff claims to have worked for Defendants.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

84. Plaintiff is precluded from receiving any relief by virtue of its own fraudulent conduct.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

85. Plaintiff did not suffer any damages.

**THIRTIETH AFFIRMATIVE DEFENSE**

86. This action is barred, in whole or in part, as a result of Plaintiff's own wrongful and dilatory conduct and its own actions or inactions, rendering the parties *in pari delicto*.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

87. That whatever damages, if any, may have been sustained by the Plaintiff herein, were caused and/or contributed to by the culpable conduct of the Plaintiff and/or Plaintiff's parties in privity.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

88. Defendant reserves its rights to assert additional affirmative defenses. Nothing herein shall be construed as a waiver of any of Defendant's rights to assert such additional defenses.

**WHEREFORE**, Prestige Window Works prays that the Court dismiss the Complaint, including each and every demand and prayer for relief contained in the Complaint against Prestige Window Works, and grant such other and further relief that the Court deems just, equitable, and proper.

## COUNTERCLAIMS AND THIRD-PARTY CLAIMS

89. Defendant/Third-Party Plaintiff Prestige, by and through its attorneys, Sage Legal LLC, hereby asserts related counterclaims against Plaintiff herein, and third-party claims against Third-Party Defendant Gotham as follows:

90. This case is about deceptive business practices by the Plaintiff and Third-Party Defendant who have taken to copying Defendant's trade dress in its website to mimic its way to success.

91. This action is not a wage dispute because Panov was never an employee of Prestige.

92. Plaintiff was engaged as an independent contractor and was entrusted with access to Defendant's business system and customer information for the sole purpose of performing services for Defendant, during which time he secretly accessed, copied, retained, and/or removed Defendant's confidential information and used it to establish his own competing enterprise, Gotham Window & Wood Repair Corporation.

93. Plaintiff's misconduct continued after his engagement ended.

94. Plaintiff accessed Defendant's customer information and other proprietary data after his alleged employment had terminated, and he used retained copies of Defendant's information to identify customers, solicit business, replicate business methods, and accelerate his own competing operation.

95. Gotham operates in the same window repair market and targets customers in the same New York City, Nassau County, and Suffolk County service area.

96. Gotham has benefited from Plaintiff's knowledge of, and access to, Prestige's customer relationships, pricing, service history, lead information, business methods, website, and goodwill.

97. Defendant is seeking damages and injunctive relief for unfair competition, trade dress infringement, and deceptive trade practices based on Panov's and Gotham's pattern and practice of copying Defendant's distinctive advertising and marketing, on its website – thereby creating actual confusion and a likelihood of confusion as to Panov and Gotham's association or affiliation with, or sponsorship or endorsement by, the Defendant. (All of Plaintiff and Third-Party Defendant's advertising at issue as alleged in this Pleading is referred to herein as the "Confusingly Similar Advertising").

98. Through its Confusingly Similar Advertising, Gotham has engaged and continue to engage, in an apparent scheme to trade off the good will and reputation of the Defendant, which is evidenced by its enviable customer list (e.g., boasting of serving over 6,000 homes on Long Island, NY) and years in business, things that Panov and Gotham have not achieved.

99. As set forth further below, Panov and Gotham's Confusingly Similar Advertising constitutes a violation of the Defend Trade Secrets Act (18 U.S.C. § 1836(b)), a false designation of origin, and unfair competition in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125), unfair and deceptive trade practices in violation of New York General Business Law § 349, and unfair competition and trade dress infringement under New York common law.

100. Defendant accordingly seeks a permanent injunction barring Plaintiff and Third-Party Defendant from creating and propagating the Confusingly Similar Advertising, as well as damages, attorneys' fees, and such other relief as the Court deems just, equitable, and proper.

**PARTIES**

101. Upon information and belief, Plaintiff is an adult resident of Queens County, New York.

102. Prestige is a business corporation, existing under the laws of the State of New York, with a principal place of business at 1129 Northern Blvd, Suite 404B, Manhasset NY 11030.

103. Prestige was founded by Andrey Lukashchuk, its principal, in 2023 and after years of dedicated work, investment of time, financial resources, and marketing efforts, Defendant has achieved great success in Nassau and Suffolk in New York, serving over 6,000 homes.

104. Upon information and belief, Gotham is a business corporation, existing under the laws of the State of New York, with a principal place of business located at 5203 Center Blvd, Long Island City, NY 11101.

105. Upon information and belief, Gotham was formed by Panov.

106. Gotham was formed in October 2024, after Defendant was first incorporated.

**JURISDICTION AND VENUE**

107. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367(a) in that the counterclaims are so related to Plaintiff's claims so as to form the same case or controversy under Article III of the United States Constitution and Rule 13 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule").

108. Furthermore, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367 based on the federal claims raised under the DTSA and the Lanham Act.

109. Defendant's federal claims are predicated on 18 U.S.C. § 1836(b), and its claims arising under the laws of the State of New York are substantially related to its federal claims such that they form part of the same case or controversy, are based on the same common nucleus of operative facts, such that this Court may exercise supplemental jurisdiction over the state law claims.

110. This Court has personal jurisdiction over Plaintiff because Plaintiff is a resident of the State of New York, and this action arises out of Plaintiff's conduct in New York.

111. This Court has personal jurisdiction over Gotham because it regularly transacts business in New York, and this action arises out of its conduct in New York.

112. Further, Gotham maintains its principal place of business in New York, operates an office out of New York, and has directed its Confusingly Similar Advertising to consumers located in New York.

113. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is in New York and a substantial part of the events giving rise to the claims herein occurred within this judicial district.

## **FACTUAL BACKGROUND**

114. Prestige has built its window and related repair business through years of investment in customer acquisition, service history, field operations, vendor relationships, pricing, marketing, digital assets, reputation, and goodwill.

115. In the ordinary course of business, Prestige collects and maintains nonpublic information concerning its customers and prospective customers, including names, addresses, telephone numbers, email addresses, service locations, lead sources, requested work, window and door conditions, estimates, quotations, pricing, discount history, job status, appointment history, service history, purchasing preferences, payment information, project timing, photographs, notes, and other customer-specific information (the "Customer Information").

116. Prestige also maintains nonpublic business information concerning pricing methodologies, profit margins, vendor and supplier information, product sourcing, service techniques, repair methods, scheduling and dispatch, marketing performance, lead-conversion

information, website analytics, internal forms, templates, operating procedures, scripts, and other commercial information (together with Customer Information, the "Prestige Confidential Information").

117. The Prestige Confidential Information is not a general list of names obtainable from public directories.

118. It reflects accumulated customer relationships, job history, specific needs, service records, pricing and quotation information, lead quality, timing, contact history, and other details developed through substantial time, expense, and effort.

119. Plaintiff received access to Prestige Confidential Information because of his engagement with Defendant and for no other purpose.

120. Any access to customer or business data was authorized solely to perform assigned work for Defendant and to further Defendant's interests.

121. To the extent Plaintiff was an employee of Defendant (which Defendant denies), Plaintiff owed Defendant duties of loyalty, good faith, honesty, and faithful service while employed, including a duty not to use Defendant's time, systems, confidential information, customer relationships, or other resources to establish or aid a competing business.

122. Plaintiff knew that Defendant's customer database, customer histories, pricing and estimate information, lead data, and internal business information belonged to Defendant and were not his personal property.

123. To the extent Plaintiff proves he is an employee, upon information and belief, during his alleged employment, Plaintiff accessed Defendant's database and customer information beyond what was legitimately necessary for assigned work and copied, downloaded,

photographed, transmitted, exported, wrote down, retained, and/or otherwise appropriated information for use outside Prestige.

124. To the extent Plaintiff proves he is an employee, upon information and belief, Plaintiff used Defendant's systems, information, time, contacts, and/or resources while still being compensated and employed by Defendant to prepare for or assist a competing business.

125. To the extent Plaintiff proves he is an employee, Plaintiff's employment ended on or about November 5, 2024.

126. His authorization to access Defendant's systems and databases ended no later than that time.

127. Upon information and belief, after his employment ended, Plaintiff nevertheless accessed and/or caused to access Defendant's customer information and other proprietary data, or continued to use copies of such information that he had wrongfully retained.

128. Defendant did not consent to any post-engagement access, retention, disclosure, or use of its confidential information by Plaintiff or Third-Party Defendant.

129. Upon information and belief, Plaintiff provided, uploaded, disclosed, or made Prestige Confidential Information available to Gotham, and the Third-Party Defendant acquired, possessed, used, and benefited from that information with knowledge, reason to know, or willful blindness as to its source.

130. The timing is significant.

131. Publicly available corporate information indicates that Gotham was formed on or about October 25, 2024, shortly before Plaintiff's engagement with Defendant ended.

132. Upon information and belief, before and after separation from Defendant, Plaintiff participated in establishing, promoting, and/or operating Gotham's competing business while exploiting knowledge and information obtained through Defendant.

133. Gotham's competing business advertises window and wood repair services, including repair of multiple window and door types, and solicits customers in New York City, Nassau County, and Suffolk County – substantially overlapping Defendant's service market.

134. Defendant and Gotham are market competitors in New York, specifically in the Long Island area, in that both provide window repair services.

135. As a window repair company, Defendant's public face and primary marketing platform is its public website located at www.prestigewindowworks.com.

136. Gotham operates under the website www.gothamwindowwoodrepairs.com.

137. Defendant has spent tens of thousands of dollars developing its website including the hiring services of professional photographers, videographers, models, and web designers.

138. Defendant's website has been a key driver of business growth, generating nearly 20,000 leads annually, approximately ninety percent (90%) of its new business, and contributing to more than 6,000 homes and projects, showing that the website is essential in helping consumers identify and differentiate the Defendant from its competitors.

139. Defendant's current website design has been live and accessible to the public, in an identical or substantially similar version of the current website, since at least February 2023.

140. Plaintiff and Gotham acknowledge the distinctive and powerful brand created by Defendant's advertising; indeed, imitation is the highest form of flattery.

141. An archived Gotham Window & Wood Repair website snapshot displays a "Workflow," "Brands we trust," "Quality," "Always in touch," and "Savings" presentation, a

quote-request form, window/door service categories, customer-review references, and geographic service areas; Gotham's website copied distinctive aspects of Defendant's website and marketing presentation.

142. The Defendant Trade Dress was used before Gotham's website, through continuous use, marketing, customer traffic, and promotion, identifies Defendant as the source of its services.

143. The Gotham website copies the Defendant's Trade Dress in material respects without a functional need to do so, including layout, tab sections, colorways, themes, and more.

144. Because Defendant and Third-Party Defendant offer overlapping services to overlapping customers in the same geographic market, the copied presentation is likely to cause confusion, mistake, or deception concerning affiliation, sponsorship, source, or connection.

145. Gotham has engaged in a pattern of copying Defendant's distinctive advertising, including the logo, font style, website design, site structure, color scheme, page layout and format, photographs, video, written content, and overall look and feel (the "Distinctive Advertising").

146. The comparisons above of Defendant's website and Third-Party Defendant's Confusingly Similar Advertising could not be clearer: they show clear intent to copy Defendant's Distinctive Advertising and create a false association or affiliation where none exists or unfairly free-ride on the strong reputation Prestige has built over a decade in business.

147. Defendant has also identified copying of its business materials apart from its website. Gotham adopted a customer invoice that substantially mirrors Prestige's preexisting invoice form in both appearance and organization, including the placement and arrangement of customer information, a window illustration, an itemized work-description table, fields identifying window and glass specifications, pricing columns, customer-action and warranty language, and the signature and payment sections.

148. The extensive similarities are not limited to generic invoice features, but extend to the particular arrangement and combination of elements used by Prestige, further evidencing Panov's and Gotham's copying of materials to which Panov had access while performing services for Defendant.

149. The websites show Gotham's deliberate and intentional copy of Defendant's Distinctive Advertising, and specifically the following elements, which together establish the overall look and feel of the Distinctive Advertising: the similar color scheme, the similar photographs and videos, the similar logos, the use of the same font style, the similar copywriting, webpage URLs, and webpage layout.

150. Gotham's website contains innumerable instances where sections of its website are similar to the Defendant's website in design, color scheme, font style, photo usage, and language.

151. Considered together, Gotham's Confusingly Similar Advertising reflects its bad faith intent to trade off of the goodwill of Prestige's extensive investment in its brand.

152. Upon information and belief, Panov and Gotham used Prestige Confidential Information to contact or target Defendant's actual or prospective customers and to divert business opportunities away from Prestige.

153. First, the copying is apparent on the face of the advertising.

154. Second, Third-Party Defendant published its Confusingly Similar Website as a new company just formed in October 2024, so it stood to benefit from any confusion.

155. Panov and Gotham's scheme have created a strong likelihood of confusion between two competing companies that offer similar and overlapping services in the same geographic market.

156. Upon information and belief, Panov and Gotham used Defendant's customer history, project information, pricing knowledge, and internal business information as a roadmap to compete without independently incurring the years of time, expense, and commercial risk Prestige incurred to develop that information.

157. Panov and Gotham had no right to possess, retain, disclose, or use Prestige Confidential Information for a competing purpose.

158. Through this lawsuit, Prestige demands that Panov and Gotham cease use of and return or destroy Prestige's confidential information.

159. As a testament to their bad faith conduct, Gotham is not a licensed contractor in Nassau County, New York, indicating its intention to coast on Prestige's success while taking every conceivable shortcut by mimicking Prestige without complying with the law.

160. Unless restrained, Panov and Gotham will continue to use Defendant's nonpublic customer and business information repeatedly, invisibly, and at minimal marginal cost, causing continuing loss of customers, loss of goodwill, price erosion, and competitive harm to Prestige.

161. Plaintiff and Third-Party Defendant's conduct has caused damage to Defendant in an amount to be determined at trial, and unless restrained, will continue to seriously and irreparably impair Defendant's business, goodwill, and reputation, for which there is no adequate remedy at law.

## CAUSES OF ACTION

### COUNT 1 – FIRST COUNTERCLAIM AGAINST PANOV AND FIRST THIRD-PARTY CLAIM AGAINST GOTHAM WINDOW WORKS

**(Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*)**

162. Defendant repeats and realleges each preceding allegation as if fully set forth herein.

163. The Prestige Confidential Information described above includes financial, business, economic, and technical information within 18 U.S.C. § 1836, including compilations of customer, pricing, service, lead, and operational information.

164. Defendant took reasonable measures to keep this information secret, including the access controls and confidentiality measures.

165. The information derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable through proper means by persons who can obtain economic value from its disclosure or use.

166. The trade secrets relate to products or services used in, or intended for use in, interstate commerce.

167. Panov and Gotham acquired Defendant's trade secrets by improper means and/or used or disclosed them without consent while knowing or having reason to know that Plaintiff had a duty to maintain their secrecy and limit their use.

168. After his authorization ended, Plaintiff retained, accessed, disclosed, and/or used Defendant's trade secrets without authorization or consent.

169. Upon information and belief, Gotham acquired, used, and/or disclosed Defendant's trade secrets knowing or having reason to know that the information had been derived from Plaintiff through improper means or under circumstances giving rise to a duty to maintain secrecy or limit use.

170. Panov's and Gotham's conduct constitutes actual and threatened misappropriation under 18 U.S.C. § 1836.

171. The misappropriation was and is willful and malicious to the extent shown by the evidence, entitling Prestige to exemplary damages and attorneys' fees under 18 U.S.C. § 1836(b)(3).

172. Panov's and Gotham's conduct has caused damage to Prestige in an amount to be determined at trial, and unless restrained, will continue to seriously and irreparably impair Defendant's business, goodwill, and reputation, for which there is no adequate remedy at law.

**COUNT 2 – SECOND COUNTERCLAIM AGAINST PANOV AND SECOND THIRD-PARTY CLAIM AGAINST GOTHAM WINDOW WORKS**
**(Infringement of Unregistered Trade Dress under 15 U.S.C. § 1125(a)(1)(A))**

173. Defendant repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

174. Defendant's valid trade dress in its Distinctive Advertising is comprised of the prominent use of window photography, specific font type, a gold chrome logo, colors and header style, and website layout, all of which create a distinctive look and feel (the "Prestige Window Works Trade Dress").

175. Defendant has made a substantial investment of time, money – tens of thousands of dollars – and effort to develop its website and implement its Distinctive Advertising campaigns.

176. By virtue of its use of the Prestige Window Works Trade Dress, Defendant is the owner at common law of the Prestige Window Works Trade Dress in connection with its window installation and repair business, and has established valuable goodwill in the Prestige Window Works Trade Dress.

177. Defendant's rights in and to the Prestige Window Works Trade Dress predate any rights that Gotham could claim in its Confusingly Similar Advertising.

178. The Prestige Window Works Trade Dress constitutes valid trade dress because it is inherently distinctive, non-functional, and serves to identify Prestige.

179. In addition, Prestige Window Works Trade Dress has acquired secondary meaning at least in light of the Defendant's substantial marketing efforts, including the breadth of its advertising efforts, and the length of time Defendant has used its Distinctive Advertising which clients associate with high-quality services.

180. The Prestige Window Works Trade Dress features unique elements that in combination create an overall look and feel that customers recall and identify with Defendant.

181. The Prestige Window Works Trade Dress represents a series of suggestive artistic design choices creating a unique overall advertising campaign and brand presentation that serves to identify Prestige and distinguish Prestige from others in the marketplace.

182. Gotham's Confusingly Similar Advertising so closely resembles the Prestige Window Works Trade Dress that it is likely to cause confusion, mistake, or deception.

183. Such use is likely to cause persons to believe, contrary to fact, that Gotham's window and wood repair services are connected with Defendant, thereby infringing the Prestige Window Works Trade Dress and diminishing and impairing Defendant's goodwill in the Prestige Window Works Trade Dress.

184. There is no functional need for Gotham to adopt, use or plagiarize the Prestige Window Works Trade Dress.

185. Panov's and Gotham's acts of infringement are willful and intentional.

186. Panov's and Gotham's conduct has caused damage to Prestige in an amount to be determined at trial, and unless restrained, will continue to seriously and irreparably impair Defendant's business, goodwill, and reputation, for which there is no adequate remedy at law.

**COUNT 3 – THIRD COUNTERCLAIM AGAINST PANOV AND THIRD THIRD-PARTY CLAIM AGAINST GOTHAM WINDOW WORKS**
**(Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A))**

187. Defendant repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

188. Gotham's use of the Confusingly Similar Advertising constitutes unfair competition and a false designation of origin, in that such conduct is likely to cause confusion, to cause mistake, or to deceive persons as to the affiliation, connection, or association of Third-Party Defendant with the Defendant.

189. There is absolutely no connection, affiliation, or association between Gotham and the Defendant.

190. Rather, they are direct competitors.

191. Indeed, Gotham has committed the foregoing acts with full knowledge of Defendant's Distinctive Advertising.

192. Thus, Gotham has willfully, deliberately, and maliciously engaged in these acts with the intent to compete unfairly with Prestige.

193. Gotham's wrongful and infringing conduct is willful and intentional.

194. Gotham's conduct has caused damage to Prestige in an amount to be determined at trial, and unless restrained, will continue to seriously and irreparably impair Defendant's business, goodwill, and reputation, for which there is no adequate remedy at law.

**COUNT 4 – FOURTH COUNTERCLAIM AGAINST PANOV AND FOURTH THIRD-PARTY CLAIM AGAINST GOTHAM WINDOW WORKS**
**(Deceptive Acts and Practices under N.Y. General Business Law § 349)**

195. Defendant repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

196. This claim arises under the laws of the State of New York.

197. By reason of the acts and practices set forth above, Third-Party Defendant has engaged, and is engaging, in the furnishing of services which is deceptive or misleading in a material way, constituting unfair and deceptive business practices in violation of Section 349 of the New York General Business Law ("GBL").

198. Gotham's activities are without Defendant's permission or authority.

199. To the contrary, Defendant demands by and through this third-party complaint that Gotham cease using its Confusingly Similar Advertising, but Gotham has refused or failed to do so.

200. Gotham's knowing and willful use of its Confusingly Similar Advertising in connection with its window installation and repair services is likely to mislead a sensible consumer acting reasonably under the circumstances.

201. Gotham's conduct is likely to deceive or mislead consumers as to whether Gotham's window services are affiliated with, sponsored by, or endorsed by Defendant.

202. The acts and conduct of Gotham are misleading and likely to cause confusion among consumers as to the origin or association of Gotham with Defendant.

203. Gotham's conduct has resulted, or is likely to result, in consumer injury or harm to the public interest.

204. As a proximate result of Gotham's actions, Defendant has suffered and will continue to suffer immediate and irreparable harm as well as great damage to its business, good will, reputation, and profits in an amount to be proven at trial.

205. Defendant's remedies at law are inadequate to compensate for this harm and damage.

**COUNT 5 – FIFTH COUNTERCLAIM AGAINST PANOV AND FIFTH THIRD-PARTY CLAIM AGAINST GOTHAM WINDOW WORKS**
**(Common Law Trade Dress Infringement)**

206. Defendant repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

207. Defendant is the owner at common law of the Prestige Window Works Trade Dress in connection with its window installation and repair services.

208. Defendant has established valuable goodwill in the Prestige Window Works Trade Dress.

209. Defendant has made a substantial investment of time, money – tens of thousands of dollars – and effort to develop its website and implement its Distinctive Advertising campaigns.

210. By virtue of its use of the Prestige Window Works Trade Dress, Defendant is the owner at common law of the Prestige Window Works Trade Dress in connection with its window installation and repair business, and has established valuable goodwill in the Prestige Window Works Trade Dress.

211. Defendant's rights in and to the Prestige Window Works Trade Dress predate any rights that Panov and Gotham could claim in its Confusingly Similar Advertising.

212. The Prestige Window Works Trade Dress constitutes valid trade dress because it is inherently distinctive, non-functional, and serves to identify Prestige.

213. Panov's and Gotham's acts of infringement are willful and intentional.

214. Panov's and Gotham's conduct has caused damage to Defendant in an amount to be determined at trial, and unless restrained, will continue to seriously and irreparably impair Defendant's business, goodwill, and reputation, for which there is no adequate remedy at law.

**COUNT 6 – SIXTH COUNTERCLAIM AGAINST PANOV AND SIXTH THIRD-PARTY CLAIM AGAINST GOTHAM WINDOW WORKS**

**(Common Law Unfair Competition)**

215. Defendant repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

216. Gotham's conduct complained of herein is likely to confuse the public, or to cause mistake, or to deceive the public into believing that Gotham's window services are authorized, sponsored, endorsed, or affiliated with Defendant, in violation of Defendant's rights in the Prestige Window Works Trade Dress under New York State common law.

217. Upon information and belief, Gotham used its Confusingly Similar Advertising with constructive and/or actual knowledge of Prestige's prior use of its Distinctive Advertising, and intended to benefit through its use of its Confusingly Similar Advertising.

218. By using its Confusingly Similar Advertising, Panov and Gotham have been unjustly enriched and Prestige has been damaged.

219. By misappropriating and trading upon the goodwill and business reputation represented by Prestige's Distinctive Advertising, Panov and Gotham have been, and unless enjoined by this Court, will continue to be, unjustly enriched at Defendant's expense.

220. The acts and conduct of Panov and Gotham as alleged above in this Pleading constitute intentional and willful unfair competition pursuant to the common law of New York.

221. Panov's and Gotham's conduct has caused and will continue to cause damage to Defendant and is causing irreparable harm to Defendant for which there is no adequate remedy at law.

222. Defendant is entitled to recover damages and to recover its costs herein in an amount to be proven at trial.

223. Defendant is also entitled to injunctive relief against Panov and Gotham.

**COUNT 7 – SEVENTH COUNTERCLAIM AGAINST PANOV**
**(Breach of Fiduciary Duty and Duty of Loyalty)**

224. Defendant repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

225. To the extent Plaintiff proves he was an employee of Defendant, by virtue of such employment and entrusted access to Defendant's customers, systems, confidential information, and business opportunities, Plaintiff owed Defendant duties of loyalty, fidelity, good faith, and, to the extent his entrusted responsibilities created fiduciary status, fiduciary duties.

226. Plaintiff breached those duties by, among other things, accessing and taking information for personal gain, retaining and using Defendant information after employment, preparing for or assisting a competing business while still employed, diverting opportunities, and using Defendant resources and relationships against Defendant.

227. Plaintiff's breaches were substantial, intentional, and directly related to the subject matter of his service to Defendant.

228. As a direct and proximate result, Defendant suffered damages, lost business, loss of goodwill, and other injury in an amount to be proven at trial.

**COUNT 8 – EIGHTH COUNTERCLAIM AGAINST PANOV**
**(Faithless Servant - Disgorgement and Forfeiture)**

229. Defendant repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

230. To the extent Plaintiff proves he was an employee of Defendant, Plaintiff was obligated to exercise the utmost good faith and loyalty in performing his work for Defendant and not to act adversely to Defendant in matters connected with his employment.

231. Plaintiff's taking and use of Defendant's confidential information and assistance to a competing enterprise constituted substantial disloyalty and conduct adverse to Defendant during his period of employment.

232. Defendant is entitled to forfeiture and disgorgement of compensation paid during the period of disloyal service.

233. As a direct and proximate result, Defendant suffered damages, lost business, loss of goodwill, and other injury in an amount to be proven at trial.

## COUNT 9 – NINTH COUNTERCLAIM AGAINST PANOV AND SEVENTH THIRD-PARTY CLAIM AGAINST GOTHAM WINDOW WORKS
**(Conversion)**

234. Defendant repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

235. Defendant owned and had an immediate superior right to possess its customer records, electronic files, data exports, photographs, documents, lists, reports, and other identifiable electronic and tangible property containing Prestige Confidential Information.

236. Panov and Gotham intentionally exercised dominion and control over copies, exports, files, records, and other property in a manner inconsistent with Defendant's rights, including retention, transfer, disclosure, and use after Plaintiff's authorization ended.

237. Defendant did not authorize Plaintiff and Third-Party Defendant to retain or use such files and records for non-Prestige purposes.

238. As a direct and proximate result, Defendant suffered damages, lost business, loss of goodwill, and other injury in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Defendant PRESTIGE WINDOW WORKS CORPORATION demands the following:

a. Judgment on all counterclaims against Plaintiff PANOV in an amount to be established at trial plus pre- and post-judgment interest, costs, attorney's fees, and punitive damages for Defendant's counterclaims;

b. Judgment on all third-party claims against Third-Party Defendant GOTHAM WINDOW & WOOD REPAIR CORPORATION in an amount to be established at trial plus pre- and post-judgment interest, costs, attorney's fees, and punitive damages for Defendant's third-party claims; and

c. Together with such other and further relief as the Court deems just and proper.

**PRESTIGE WINDOW WORKS DEMANDS TRIAL BY JURY**

Pursuant to Rule 38(b), Prestige Window Works demands a trial by jury on all questions of fact raised in this case.

Dated: Jamaica, New York
October 8, 2026

Respectfully submitted,

**SAGE LEGAL LLC**
*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
(917) 807-7819 (cellular)
emanuel@sagelegal.nyc

*Attorneys for Defendant/Third-Party Plaintiff*
*Prestige Window Works Corporation*

**VIA ECF**
All counsel of record