SLPC
Spasojevich Law, P.C.

**52 Duane Street, 7th Floor**
**New York, New York 10007**
**Tele: (914) 487-3592**
**www.spasojevichlaw.com**

Hon. Sanket J. Bulsara
United States District Court
Eastern District of New York
100 Federal Plaza Courtroom 930
Central Islip, New York 11722
**Via ECF**

October 23, 2026

**Re: Aleksei Panov v. Prestige Window Works Corporation**
**Case No. 2:24-CV-8199 (Pre-Motion Conference Request)**

Dear Judge Bulsara:

We represent Plaintiff and Counterclaim Defendant Aleksei Panov ("Panov"). Pursuant to Your Honor's Individual Practices, Panov respectfully requests a pre-motion conference concerning a proposed motion to dismiss the nine counterclaims asserted against him by Defendant Prestige Window Works Corporation ("Prestige") in its October 8, 2026 Answer with Counterclaims and Third-Party Complaint (the "Answer"). DE 24, pp. 20–29, ¶¶ 162–238. Panov intends to move under Federal Rule of Civil Procedure 12(b)(6).

In summary, Count 1 does not plead reasonable secrecy measures; Counts 2, 3, and 5 do not articulate the claimed trade dress or Panov's personal participation; Count 4 identifies neither deceptive conduct by Panov nor cognizable public harm; Count 6 fails for the same trade-dress reasons and pleads its misappropriation theory only in conclusory terms; Counts 7 and 8 do not plead misconduct during an employment or agency relationship; and Count 9 does not plead interference with Prestige's possessory rights.

**1. Defend Trade Secrets Act (Count 1).**

Count 1 fails because Prestige does not plausibly allege that it took reasonable measures to preserve the secrecy of the information at issue, an essential element of a claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836(b), 1839(3).

Prestige identifies the alleged trade secrets as customer, pricing, service, lead, and operational compilations, alleging economic value, interstate commerce, and unauthorized acquisition or use. DE 24 ¶¶ 163, 165–170.

But its only secrecy-measures allegation invokes, without elaboration, "the access controls and confidentiality measures." DE 24 ¶ 164. It identifies no controls, access restrictions, confidentiality obligations, or safeguards against dissemination.

Reasonable secrecy measures require concrete safeguards, not unidentified controls. *Pauwels v. Deloitte LLP*, 83 F.4th 171, 181 (2d Cir. 2023); *Mason v. AmTrust Fin. Servs., Inc.*, 848 F. App'x 447, 450 (2d Cir. 2021) (summary order). Without facts identifying those measures and their reasonableness, Count 1 should be dismissed against Panov.

**2. Federal and Common-Law Trade Dress and False Designation (Counts 2, 3, and 5).**

Counts 2, 3, and 5 fail because Prestige does not precisely define its trade dress. Its open-ended list includes window photography, an unspecified font, a "gold chrome" logo, colors, headers, website layout, themes, tabs, URLs, text, photographs, and videos. DE 24 ¶¶ 97–99, 174–179, 206–216.

Prestige's own pleading is internally inconsistent: Count 2 defines the trade dress as "the prominent use of window photography, specific font type, a gold chrome logo, colors and header style, and website layout," DE 24 ¶ 175, while its separate "Distinctive Advertising" allegation adds the logo, font style, website design, site structure, color scheme, page layout and format, photographs, video, written content, and overall look and feel, DE 24 ¶ 97. Labels such as distinctive and nonfunctional do not identify the particular protected combination.

A claimant must precisely articulate the elements composing its trade dress. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116–17 (2d Cir. 2001); *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). That requirement is distinct from distinctiveness, functionality, breadth, and confusion. *Cardinal Motors, Inc. v. H&H Sports Protection USA Inc.*, 128 F.4th 112, 121–23 (2d Cir. 2025), found sufficient articulation and vacated dismissal but preserved the requirement. Prestige does not specify whether it claims all listed features or some subset. Relabeling that undefined combination as false designation or common-law infringement does not cure the defect.

Nor has Prestige properly pled that its trade dress has a secondary meaning, distinctive, likely to cause confusion. Prestige claims that Panov copied Gotham's logo, site structure, color scheme, page layout, layout, tab sections, themes; however, an inspection of both websites show different colors, different logos, different site structures, color schemes, page layout, tab sections, and themes; therefore, any similarities remaining at generic and commonly used and not protected. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 118 (2d Cir. 2001) Nor does Prestige pled to how they are distinctive to Prestige *Life's Fortune LLC v. Serenu Inc.*, No. 24-CV-5066 (CS), 2026 U.S. Dist. LEXIS 59686, at *24 (S.D.N.Y. Mar. 20, 2026)Therefore, Prestige has failed to plead claims in Counts 2, 3, and 5.

Independently, even if Prestige had adequately defined its trade dress, Counts 2, 3, and 5 fail against Panov because Prestige does not plead his personal participation in any infringement. Individual liability requires personal authorization, direction, or participation in infringement, or being its moving, active, conscious force. *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 367 (S.D.N.Y. 2014).

Prestige alleges, only "[u]pon information and belief," that Gotham "was formed by

Panov" and that he participated in "establishing, promoting, and/or operating" it, and collectively attributes copying to both. DE 24 ¶¶ 92–100, 105–106. It supplies no facts showing that Panov selected, approved, directed, or implemented the challenged presentation. General participation in Gotham's operations does not establish responsibility for particular infringement. Indeed, Count 3's operative allegations attribute the challenged advertising, knowledge, and intent solely to Gotham and do not mention Panov at all. DE 24 ¶¶ 188–194. Those counts should therefore be dismissed against Panov.

**3. Deceptive Practices Under General Business Law § 349 (Count 4).**

Count 4 should be dismissed against Panov because its operative allegations identify only Gotham (referred to as "Third-Party Defendant" or "Gotham"), not Panov, as using deceptive advertising and causing injury. DE 24 ¶¶ 195–204. Panov is named only in the count's heading; no deceptive act by Panov is identified.

Section 349 requires consumer-oriented, materially misleading conduct causing injury. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25–26 (1995); *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 621 (2009). In trademark disputes, ordinary source confusion and competitive injury do not establish specific and substantial public harm. *Mayes v. Summit Entertainment Corp.*, 287 F. Supp. 3d 200, 206–07 (E.D.N.Y. 2018). The dispositive question is whether the challenged conduct harms consumers at large, not merely a competitor. *Can't Live Without It, LLC v. ETS Express, Inc.*, 287 F. Supp. 3d 400, 410–12 (S.D.N.Y. 2018).

Prestige recites consumer injury and public harm, but identifies only its own lost business, goodwill, reputation, and profits. DE 24 ¶¶ 203–204. Conclusory consumer-confusion allegations do not transform this commercial dispute into a Section 349 claim. Because Count 4 identifies neither Panov's deceptive conduct nor cognizable public harm, it should be dismissed against him.

**4. Common-Law Unfair Competition (Count 6).**

Count 6, read together with the factual allegations it incorporates, combines two theories: a passing-off and unjust-enrichment theory based on the challenged advertising and an information-misappropriation theory alleging that Panov and Gotham took, disclosed, and used confidential information to solicit customers and divert business opportunities. DE 24 ¶¶ 217–223.

The passing-off theory fails for the same reasons as Counts 2, 3, and 5. Prestige does not define the trade dress purportedly copied with adequate precision, and it does not allege facts showing that Panov personally authorized, directed, or implemented the particular advertising claimed to infringe.

The information-misappropriation theory is likewise conclusory. Unfair competition requires bad-faith misappropriation of labor, skill, expenditures, or goodwill. *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478 (2007). Prestige collectively alleges retention, disclosure,

use, and diversion without identifying any disclosure by Panov, customer solicited using protected information or diverted transaction. Allegations that Gotham benefited from his knowledge do not identify his wrongful conduct. DE 24 ¶¶ 92–100.

These labels do not make misappropriation plausible. Count 6 should be dismissed against Panov in its entirety or, alternatively, the Court should dismiss its passing-off theory and limit Count 6 to any theory that Prestige has independently and adequately pleaded.

**5. Breach of Fiduciary Duty and Faithless Servant (Counts 7 and 8).**

Counts 7 and 8 fail because Prestige does not plausibly identify actionable misconduct during an employment or agency relationship.

Prestige alleges taking and retaining information, assisting a competitor, diverting opportunities, and using its resources. DE 24 ¶¶ 226–227. Employees may prepare to compete but may not misuse employer information, resources, or time. *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 521–22 (S.D.N.Y. 2011). Prestige does not identify the information taken, the opportunity diverted, or any conduct and resulting injury attributable to a breach while a fiduciary duty existed.

Faithless-servant liability likewise requires employment or agency and misconduct during service. *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 200–02 (2d Cir. 2003). Prestige generally alleges disloyalty during employment without identifying when the acts occurred or facts establishing that Panov then acted as its employee or agent. DE 24 ¶¶ 231–232.

Nor does Gotham's alleged formation on or about October 25, 2024, before Panov's engagement ended on or about November 5, 2024, cure the deficiency: forming a competing entity is permissible preparation to compete, and Prestige pleads no specific misuse of its information, time, or resources during that interval. Accordingly, Counts 7 and 8 should be dismissed.

**6. Conversion (Count 9).**

Count 9 fails because Prestige alleges no deprivation of possession, access, or use of identifiable property. Its allegations concern copies, exports, files, records, and other property retained, transferred, disclosed, or used after authorization ended. DE 24 ¶¶ 235–238. It identifies no withheld originals, deleted records, blocked access, or other interference with its possession.

Unauthorized copying or use alone does not establish conversion where the owner retains possession, access, and use. *Pure Power Boot Camp*, 813 F. Supp. 2d at 536. The separate allegation that Panov "removed" information, identifies no original property lost or rendered inaccessible. Because Count 9 alleges copying and use without factual interference with possessory rights, it should be dismissed against Panov.

For these reasons, Panov respectfully requests a pre-motion conference and a briefing schedule for a motion directed solely to the nine counterclaims asserted against him. Panov will ask that the counterclaims be dismissed with prejudice because Prestige has already pleaded these theories at length and any amendment would be futile.

We thank the Court for its attention to this matter.

Respectfully Submitted,

*/s/Lawrence Spasojevich*
Lawrence Spasojevich, Esq.